**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION**

**CIVIL NO.  1:05CV263-3
(1:03CR50)**

| | | |
|---|---|---|
| **CHARLES JETER GRIFFITH,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **MEMORANDUM AND** |
| | ) | **O R D E R** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| ——————————————— | ) | |

**THIS MATTER** is before the Court on Petitioner's motion to vacate,

set aside, or correct sentence pursuant to 28 U.S.C. § 2255 and his

accompanying motion to proceed in *forma pauperis,* filed July 20, 2005;

the Respondent's answer and motion to dismiss,[1] filed October 25, 2007;

Petitioner's response to Respondent's answer and motion to dismiss, filed

November 26, 2007; and Petitioner's "Motion in Opposition to

_____

[1] On November 2, 2007, the Court directed Gregory Newman,
Petitioner's trial counsel, to file an affidavit addressing the allegations
contained in Petitioner's § 2255 motion.  Mr. Newman filed his affidavit with
the Court on November 21, 2007.  By Order dated November 26, 2007,
Respondent's motion to dismiss was converted to one for summary
judgment and Petitioner was directed to respond to such motion pursuant
to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

Respondent's Motion for Summary Judgment," filed December 26, 2007.

For the reasons stated herein, the Respondent's motion for summary

judgment is granted, and Petitioner's motion to vacate is denied and

dismissed.

## I. PROCEDURAL HISTORY

On June 2, 2003, the Petitioner and two co-Defendants were

charged with conspiracy to possess with intent to distribute at least 500

grams of a mixture or substance involving a detectable amount of

methamphetamine, in violation of 21 U.S.C. §§ 846 and 841.  **See Bill of**

**Indictment, filed June 2, 2003**.  Simultaneously with the indictment, the

Government filed an information pursuant to 21 U.S.C. § 841(b) alleging

the conspiracy involved the possession with intent to distribute in excess of

500 grams of a mixture or substance involving a detectable amount of

methamphetamine.  **Information pursuant to Title 21, U.S.C., [§] 841(b),**

**filed June 2, 2003**.  The Petitioner entered a not guilty plea at his

arraignment on July 29, 2003, and proceeded to trial by jury on September

8, 2003.  The jury found Petitioner guilty of the charged contained in the

indictment on September 9, 2003.  **Jury Verdict, filed September 9, 2003**.

The jury also found that the Government had proved beyond a reasonable doubt that the conspiracy involved at least 500 grams of a mixture or substance containing a detectable amount of methamphetamine, and that the Petitioner knew of or could have reasonably foreseen the involvement of this amount of methamphetamine in the conspiracy and in furtherance thereof. *Id*. On March 18, 2004, Petitioner appeared with counsel for his sentencing hearing. This Court sentenced Petitioner to a term of 135 months imprisonment followed by five years of supervised release.

**Judgement in a Criminal Case, filed April 2, 2004**.

Petitioner filed a timely notice of appeal on March 29, 2004. On appeal, Petitioner argued that his attorney was ineffective because he failed to move for a downward departure based on Petitioner's medical conditions and also failed to object or move to strike inadmissible Rule 404(b) evidence. The Fourth Circuit held that Petitioner had "not shown conclusively from the face of the record that counsel provided ineffective representation" and, therefore, affirmed Petitioner's conviction and sentence without prejudice to his raising claims of ineffective assistance of counsel in a § 2255 proceeding. ***United States v. Griffith*, 111 F. App'x**

**192 (4th Cir. 2004).** Petitioner did not petition the Supreme Court for a writ of *certiorari*.

Petitioner timely filed this § 2255 motion on July 20, 2005, alleging that his attorney was ineffective for, 1) failing to raise any valid objections to the testimony of the Government's witnesses; (2) failing to adequately question witnesses and failing to follow up on unanswered questions; (3) failing to explore leads offered in witnesses' testimony; (4) failing to bring out inconsistencies in witnesses' testimony; (5) failing to object to testimony concerning drug activity prior to the commencement of the charged conspiracy; and (6) failing to offer defense witnesses on Petitioner's behalf. Petitioner also claims that his counsel was ineffective for failing to object to the presentence report ("PSR") regarding his criminal history points, failing to review the PSR with him prior to sentencing, and failing to move for a downward departure at sentencing pursuant to U.S.S.G. § 5H1.4 based on his medical conditions, namely, an amputated leg resulting from a motorcycle accident in the distant past, severe neck pain from an accident in 2002, and his addiction to prescription pain killers and sleeping pills. Furthermore, Petitioner alleges that his counsel spent only two hours reviewing the evidence with him on the eve of trial and

contends that counsel was unprepared for trial and lacked the trial skills or abilities required in federal proceedings.  Petitioner also alleges that his conviction was obtained as a result of an unconstitutional search and seizure and challenges the validity of the search warrant because the warrant served on him was not accompanied by the affidavit referenced on the face of the warrant.  Finally, Petitioner alleges that "critical evidence" presented to the jury was never admitted during the course of the trial.  Specifically, Petitioner claims that the transcript of the undercover drug buy between him and Vance Storie was shown to the jury but was not admitted as evidence during the trial.  Petitioner also questions the accuracy of the transcripts of the audio tapes played for the jury during his trial, arguing that because the transcript does not show by whom it was prepared, the Government could have "just typed it up prior to trial."  **Petitioner's Memorandum, at 29.**

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(c), a Court may grant summary judgment when the pleadings and other relevant documents reveal that "there is not genuine issue as to any material fact and . . . the

moving party is entitled to a judgment as a matter of law." *See, e.g.*

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Matsushita Elec. Indus.*

*Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Miller v. Leathers*,

913 F.2d 1085, 1087 (4th Cir. 1990).

A genuine issue exists only if "the evidence is such that a reasonable

jury could return a verdict for the non-moving party." *Anderson*, *supra*, at

**248.** However, the party opposing summary judgment may not rest upon

mere allegations or denials and, in any event, a "mere scintilla of evidence"

is insufficient to overcome summary judgment." *Id.* at 249-50.

_____

_____              **III. ANALYSIS**

A.    **Petitioner is procedurally barred from relief on his claims of an**
       **invalid search warrant and that the Court failed to admit**
       **evidence submitted to the jury**

Petitioner's failure to challenge on direct appeal his claims of an

invalid search warrant and trial error in allowing the jury to read a transcript

of the tape of an undercover drug buy without admitting the transcript as

evidence bars any review pursuant to 28 U.S.C. § 2255.  "A claim raised

for the first time in a § 2255 motion is generally not cognizable in federal

court[.]" ***United States v. Landrum***, 93 F.3d 122, 124 (4th Cir. 1996).

"Habeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'" ***Bousley v. United States***, 523 U.S. 614, 621-22 (1998) (quoting ***Reed v. Farley***, 512 U.S. 339, 354 (1994) (other citations omitted)). "In order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains[,] or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack." ***United States v. Mikalajunas***, 186 F.3d 490, 492-93 (4th Cir. 1999) (citing ***United States v. Frady***, 456 U.S. 152, 167-68 (1982)); ***see also, Stone v. Powell***, 428 U.S. 465, 512 n.10 (1976).

"[C]ause . . . requires a showing of some external impediment preventing counsel from constructing or raising the claim." ***Murray v. Carrier***, 477 U.S. 478, 492 (1986); ***see also, Turner v. Jabe***, 58 F.3d 924, 927 (4th Cir. 1995). In order to establish "actual prejudice" the defendant must show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." ***Frady,***

**456 U.S. at 170.**  Actual innocence means factual innocence, not merely legal insufficiency.  ***Bousley*, 523 U.S. at 623**.  In order to establish actual innocence, Petitioner must show that based on all the evidence "it is more likely than not that no reasonable juror would have convicted him." *Id.* **(quotation omitted).**

In the instant case, Petitioner states that he did not raise these issues because he "did not realize . . . all of the legal issues and matters" until he arrived at federal prison where he had access to the law library and read the transcripts of his trial.  **Petitioner's Motion, at 7.**  Ignorance or inadvertence does not constitute cause, nor does failure to recognize the factual or legal basis for a claim.  ***See Murray*, 477 U.S. at 486-87.** Likewise, Petitioner offers no evidence to demonstrate that he is actually innocent.  Therefore, Petitioner's claims of an invalid search warrant and trial error in failing to admit into evidence the transcript of a tape provided to the jury[2] during his trial are not cognizable under 28 U.S.C. § 2255.

---

[2] Contrary to the Petitioner's assertions, the transcript was admitted into evidence, which explains why this issue was not presented on appeal. *See* **Government's Exhibit List, filed September 8, 2003 (Exhibits 15 and 16 admitted into evidence September 8, 2003).**

**B.    Ineffective assistance of counsel claims**

With respect to claims of ineffective assistance of counsel, a petitioner must show that counsel's performance was constitutionally deficient to the extent that it fell below an objective standard of reasonableness, <u>and</u> that he was prejudiced thereby. ***Strickland v. Washington*, 466 U.S. 687-91 (1984)**. In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. ***Id.* at 689; *see also Fields v. Attorney Gen. of Md.*, 956 F.2d 1290, 1297-99 (4th Cir. 1992); *Hutchins v. Garrison*, 724 F.2d 1425, 1430-31 (4th Cir. 1983); *Marzullo v. Maryland*, 561 F.2d 540 (4th Cir. 1977).**

Furthermore, in considering the prejudice prong of the analysis, the Court must not grant relief solely because the petitioner can show that, but for counsel's performance, the outcome would have been different. ***Sexton v. French*, 163 F.3d 874, 882 (4th Cir. 1998)**. Rather, the Court "can only grant relief under . . . *Strickland* if the 'result of the proceeding was fundamentally unfair or unreliable.'" ***Id.* (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369-70 (1993)).** Under these circumstances, the

petitioner "bears the burden of proving *Strickland* prejudice." **Fields, *supra* (citing *Hutchins*, *supra*, at 1430-31).**

Petitioner claims his attorney was ineffective throughout the trial by failing to adequately cross-examine the Government's witnesses; failing to bring out the inconsistencies in the witnesses' testimony; failing to raise valid objections to witnesses' testimony, including testimony concerning drug activity prior to the commencement of the charged conspiracy; and failing to call defense witnesses on Petitioner's behalf.  Petitioner also faults counsel for failing to ask for a continuance based on the short time between his arrest on July 25, 2003, and his trial on September 8, 2003.

First, Petitioner claims that counsel failed to adequately cross-examine witnesses and failed to stress the inconsistencies in the witnesses' testimony.  In his argument, Petitioner reviews the testimony of each of the Government's witnesses and faults counsel's performance. However, he fails to demonstrate how a stronger or more extensive cross-examination of those witnesses would have benefitted him, resulting in a different outcome of the trial.  Therefore, Petitioner has failed to establish the prejudice prong of the *Strickland* test and his claim must fail.

Although Petitioner frames these alleged deficiencies in counsel's performance as ineffective assistance, these claims amount to no more than attacks on the credibility of the various witnesses' testimony. As with his previous claims discussed *supra*, Petitioner did not raise this claim on direct review, and therefore, such claim is not cognizable on federal habeas review. ***See Landrum, supra.*** Additionally, "the credibility of witnesses is a matter solely within the province of the jury, and is not reviewable [on appeal]." ***See Pigford v. United States*, 518 F.2d 831, 836 (4th Cir. 1975).**

Next, Petitioner faults counsel for failing to make valid objections to testimony and evidence; specifically, Petitioner claims counsel failed to make an objection to the evidence of Petitioner's drug transactions that occurred before July 2002, the date alleged as the beginning of the charged conspiracy. Petitioner alleges that the testimony of Zeb Griffith, Todd Burleson, Michael Lee and Johnny Hudgins irreparably prejudiced him in the eyes of the jury.

Evidence of uncharged misconduct is not impermissible character evidence and does not run afoul of Fed. R. Evid. 404(b) if it arises out of the same series of transactions.

>It is well-established, however, that the mere fact that the evidence involved activities occurring before the charged time frame of the conspiracy does not automatically transform that evidence into "other crimes" evidence.  Rather, evidence of uncharged conduct is not considered "other crimes" evidence if it "arose out of the same . . . series of transactions as the charged offense, . . .  or if it is necessary to complete the story of the crime (on) trial."

*United States v. Kennedy*, 32 F.3d 876, 885 (4th Cir. 1994) (quoting *United States v. Towne*, 870 F.2d 880, 886 (2d Cir. 1989)) (other internal citations omitted).

The testimony of Petitioner's co-Defendant Zeb Griffith demonstrated how the conspiracy among him, Petitioner and Bridget Wilson came into existence.  Zeb Griffith put Petitioner and Wilson together.  **Transcript of Jury Trial Proceedings, filed May 28, 2004, Vol. I, at 41-42 (Zeb Griffith: "[Petitioner] said he'd like to get some dope, and I said, I know where I can get you some dope, and I could get it from Bridget [Wilson], so I introduced Bridget to him.").**  The few remarks he made in his testimony about events in 2001, before the starting date of the conspiracy, completed the story by explaining how the conspiracy began.  *Id.* **Vol. I, at 36-42.**  The testimony of Johnny Hudgins focused on the time period of November and December 2001, about seven months prior to the beginning of the

conspiracy. *Id.* **Vol. I, at 8, 11.** Hudgins' past dealings with the Petitioner set the stage for a phone call soon after the search was executed on Petitioner's home in January 2003 in which Petitioner accused Hudgins of "snitching" on him. *Id.* **Vol. I, at 13.** Michael Lee was unclear about whether the events he was describing occurred in May 2001 or May 2002. *Id.* **Vol. I, at 75**. There was a similar lack of clarity in the testimony of Todd Burleson who, although he testified that his drug relationship with Griffith began in 2000, was not specific whether it ended in 2001 or 2002. *Id.* **Vol. I, at 186**. Hudgins, Lee and Burleson all presented themselves as Petitioner's drug customers and this served to demonstrate a pattern and reason why Petitioner needed to purchase large quantities of methamphetamine from Wilson. All who testified about events that were prior to the beginning date of the conspiracy showed how the conspiracy began and continued. ***See United States v. Mark*, 943 F.2d 444, 448 (4th Cir. 1991) (holding that evidence of uncharged criminal activity is admissible "where it 'furnishes part of the context of the crime.'") (quoting *United States v. Rawle*, 845 F.2d 1244, 1247 n.4 (4th Cir. 1988)) (other citations omitted).** "By providing the jury with background information on [Petitioner's] activities during the preparatory stages of the conspiracy, this evidence 'served to

complete the story of the crime on trial.'" **Kennedy, 32 F.3d at 886**

**(quoting United States v. Masters, 622 F.2d 83, 87 (4th Cir. 1980)).**

Because the testimony of Zeb Griffith, Burleson, Lee and Hudgins does not

constitute "other crimes" evidence, Petitioner has not established that his

counsel was deficient in failing to object to its admission.

Next, Petitioner alleges that generally counsel was unprepared for trial

and unskilled in federal court proceedings.[3]  He contends that his counsel

was ineffective for failing to request a continuance of his trial date.

Petitioner was arrested on July 25, 2003, made his initial appearance before

the Magistrate Judge on July 28, 2003, was appointed counsel on July 28,

2003, and entered a not guilty plea at his arraignment on July 29, 2003.  **See**

**Arrest Warrant, filed July 28, 2003; Election of Counsel Form, filed July**

**28, 2003; Arraignment Order, filed July 29, 2003**.  Petitioner's trial was

scheduled for September 8, 2003, 41 days after he appeared with counsel.

The Speedy Trial Act imposes statutory time limits for completing key

stages of federal prosecutions.  **See 18 U.S.C. § 3161**.  The Act provides

---

[3] The record shows that counsel was an able and well-prepared advocate of Petitioner at all times during his trial.  Moreover, Mr. Newman frequently represents defendants before this Court and the Court knows him to be skilled in federal court proceedings.

that trial shall commence within 70 days from the filing of an information or indictment or from an initial appearance, whichever is later.  The Act also provides that trial shall not commence less than 30 days from the date of initial appearance.  **18 U.S.C. §§ 3161(c)(1), (c)(2).**  While the Speedy Trial Act allows for continuances beyond the minimum thirty-day period, it also provides for the imposition of sanctions upon counsel who knowingly files frivolous motions or makes false statements in order to obtain a continuance of the trial, or "otherwise willfully fails to proceed to trial without justification consistent with section 3161."  **18 U.S.C. §§ 3162(b).**  Petitioner has faulted counsel for failing to request a continuance of his trial, however, he has offered no facts to demonstrate why counsel should have requested a continuance or to support a reasonable probability that the Court would have granted such a motion.  Nor does he state that he requested his attorney to seek a continuance for any reason.  Counsel cannot be faulted for working within the requirements of the Speedy Trial Act absent evidence of a legitimate reason justifying a request for a continuance, which has not been established here.  Therefore, Petitioner has not established either prong of the *Strickland* test with respect to this claim and his claim is denied.

Finally, Petitioner contends that his counsel was ineffective for failing to call defense witnesses on his behalf.  However, Petitioner provides neither the names of the witnesses he would have called nor a summary of the testimony they would have provided that would have changed the outcome of his trial.  Consequently, Petitioner has failed to establish the prejudice prong of the *Strickland* test and his claim is denied.

Petitioner also alleges he received ineffective assistance of counsel during the sentencing proceedings.  He contends that counsel failed to review the PSR with him prior to sentencing, failed to object to the assigned criminal history points, and failed to move for a downward departure pursuant to U.S.S.G. § 5H1.4 based on Petitioner's leg amputation after a motorcycle accident when he was 17 years old and his severe neck pain from an automobile accident in 2002.

With respect to Petitioner's claim that his counsel failed to review the PSR with him prior to sentencing, the record reveals that Petitioner advised the Court at the start of his sentencing hearing that counsel had not reviewed the PSR with him.  **Transcript of Sentencing Hearing, filed May 28, 2004, at 2.**  At that point, the Court stopped the proceedings and allowed counsel to review the PSR with Petitioner.  After both Petitioner and counsel

advised the Court that they had reviewed the PSR, Petitioner stated that he understood the contents of the PSR and counsel advised the Court that he believed the Petitioner understood the contents of the PSR. *Id.* **at 2-3.** Because the record is clear that the Court afforded Petitioner time to review the PSR with his counsel prior to the imposition of sentence, Petitioner has not established the prejudice prong of the *Strickland* test with respect to this claim and it is, therefore, denied.

With respect to the Petitioner's claim that his attorney failed to object to his criminal history calculation, the PSR shows Petitioner had a total of two criminal history points from convictions in 1996 which established a criminal history category of II. **Presentence Report, ¶¶ 32-35**. Petitioner alleges that he "indicated [to his attorney] that he felt that one of the points he had received on his criminal history calculations was incorrect." **Petitioner's Memorandum, at 37.** Petitioner bears the burden of proving that a conviction is constitutionally invalid. ***See United States v. Davenport***, **884 F.2d 121, 124 (4th Cir. 1989).** Petitioner fails to state why these criminal history points were incorrect and offers no evidence to establish that they were constitutionally invalid. Petitioner's claim that his counsel was ineffective for failing to object to his criminal history calculation

is conclusory and not supported by any evidence. Petitioner has not satisfied either prong of the *Strickland* test; therefore, this claim is denied.

Finally, Petitioner claims that his counsel was ineffective for failing to move for a downward departure pursuant to U.S.S.G. § 5H1.4 based on his medical conditions, namely an amputated right leg, severe neck pain, and addiction to prescription painkillers and sleeping pills. **Petitioner's Memorandum, at 34.**

Section 5H1.4 expressly requires "extraordinary physical impairment" as a prerequisite to justify sentencing outside the guidelines and discourages a departure based on a defendant's physical condition. ***United States v. Crumbliss*, 58 F. App'x 577, 580 (4ᵗʰ Cir. 2003)**. Various circuits consistently affirmed this clear mandate of the Sentencing Guidelines. ***See, e.g., United States v. Guajardo*, 950 F.2d 203, 208 (5ᵗʰ Cir. 1991) (55 year-old defendant's medical conditions, which included cancer in remission, high blood pressure, a fused right ankle, an amputated left leg and drug dependency, were not sufficiently "extraordinary" to justify a downward departure because of poor health); *United States v. Winters*, 105 F.3d 200, 208-09 (5ᵗʰ Cir. 1997) (defendant's medical condition of sarcoidosis, a chronic inflamation of multiple organs, is**

**not sufficiently "extraordinary" to justify a § 5H1.4 departure);** ***United***

***States v. Johnson*, 71 F.3d 539, 544-45 (6th Cir. 1995) (reversing**

**downward departure under § 5H1.4 where 65 year-old defendant had**

**been diagnosed as suffering from diabetes, high blood pressure,**

**hypothyroidism, ulcers, potassium losing enteropathy, reactive**

**depression and a major depressive disorder);** *compare Crumbliss*,

*supra* **(atypical diabetic condition warranted downward departure**

**where defendant developed complication including amputation of two**

**toes and use of a wheelchair due to nerve damage and condition was**

**not stabilized and best course of treatment had not yet been**

**determined).**

Further, where the Bureau of Prisons has the ability to provide

medical treatment for the defendant's condition, departure under § 5H1.4 is

generally not appropriate.[4]  ***See United States v. Persico*, 164 F.3d 796,**

**806 (2d Cir. 1999) (a § 5H1.4 departure requires medical conditions that**

**BOP is unable to accommodate);** *United States v. Greenwood*, 928 F.2d

**645 (4th Cir. 1991) (incarceration would jeopardize treatment).**

---

[4] Notably, the PSR states that Petitioner "was not interested in any type of substance abuse program" available through the BOP if he received an active sentence.  **PSR, ¶ 47**.

The relevant case law does not support a downward departure based on Petitioner's physical problems and addictions.  Moreover, Petitioner has not established that he would have received a downward departure in his sentence under § 5H1.4, and therefore, he has not demonstrated either that his trial counsel was ineffective in failing to argue for the reduction or that he was prejudiced by his failure to do so.  Therefore, Petitioner's ineffective assistance of counsel claim on this ground is denied.

Furthermore, the Court notes that counsel did highlight Petitioner's health issues and addiction to pain medications for the Court at sentencing and argued that such factors justified a sentence at the low-end of the Guideline range.  **Sentencing Transcript,** *supra*, **at 5**.  Indeed, counsel's arguments at sentencing were well received by the Court in that Petitioner received the sentence suggested by his attorney.  *Id*. **at 6 ("We would ask the Court to please impose the 135-month incarceration period for Mr. Griffith.").**

**C.** **Claims raised for the first time in "Petitioner's Motion in Opposition to Respondent's Motion for Summary Judgment" are not properly before the Court**

Petitioner filed a response to the Government's motion for summary judgment on December 26, 2007, and for the first time raised several additional ineffective assistance of counsel claims[5] that were not included in his initial motion to vacate and to which the Government had not responded in either their answer or motion for summary judgment. Such claims are not properly before the Court as they were not raised in Petitioner's initial motion

_____

[5] Petitioner contends that his counsel was ineffective for failing to,1) explain the safety valve provision; 2) challenge the voluntariness of Petitioner's statement to law enforcement shortly after the search of his home; 3) locate the affidavit attached to the search warrant of his home and for failing to attack the validity of the search warrant; 4) move to suppress evidence obtained pursuant to the search warrant of his home; and 5) attack the validity of the tax assessment and related seizure of his property. ***Petitioner's Motion in Opposition,*** **filed December 26, 2007, at 4-8.**

or in a timely filed motion to amend.[6]   Because these new claims are not

properly before the Court, they will not be addressed.


## IV. ORDER

**IT IS, THEREFORE, ORDERED** that Petitioner's motion to vacate, set

aside, or correct sentence pursuant to 28 U.S.C. § 2255 is hereby **DENIED**,

and the Respondent's motion for summary judgment is **GRANTED.**   A

Judgment dismissing this action is filed herewith.

------------------------

[6] Even if Petitioner were to file a motion to amend, such motion would be denied.  Indeed, Petitioner's case became final for purposes of collateral review in January 2006.  Petitioner's opposition to the Government's motion for summary judgment, which included claims not raised in Petitioner's initial motion to vacate, was filed on December 26, 2007 – well beyond the one-year limitation period outlined in the Antiterrorism and Effective Death Penalty Act. **28 U.S.C. § 2255.** Furthermore, Petitioner's new claims of ineffective assistance of counsel do not relate back to the claims raised in his initial motion to vacate.  *See United States v. Pittman*, **209 F.3d 314 (4th Cir. 2000);** *see also United States v. Craycraft*, **167 F.3d 451, 456-57 (8th Cir. 1999) (counsel's failure to file an appeal as instructed did not relate back to ineffective assistance of counsel claims for failure to pursue a downward departure and to object to the types of drugs at issue);** *United States v. Duffus*, **174 F.3d 333 (3d Cir. 1999) (ineffective assistance of counsel for failure to move to suppress evidence did not relate back to several ineffective assistance of counsel claims in his original motion).**

**IT IS FURTHER ORDERED** that, having previously been found to be indigent and there being no filing fee required for filing a motion pursuant to § 2255, the Petitioner's application to proceed in *forma pauperis* is **DENIED** as moot.

Signed: February 26, 2008

Lacy H. Thornburg
United States District Judge